CLINTON COUNTY GENERAL HEALTH DISTRICT,
Appellant and Cross–Appellee,

v.

ROLFE et al., Appellees and Cross–Appellants.

[Cite as *Clinton Cty. Gen. Health Dist. v. Rolfe* (1992), 83 Ohio App.3d 366.]

Court of Appeals of Ohio,
Clinton County.

No. CA91–09–022.

Decided Nov. 2, 1992.

*Judy A. Gano*, Assistant Prosecuting Attorney, for appellant and cross-appellee.

*Inza E. Johnson*, for appellees and cross-appellants.

*Lee Fisher*, Attorney General, and *Steven P. Dlott*, Assistant Attorney General, Health & Human Services Section, for *amicus curiae*, state of Ohio.

---

WALSH, Judge.

In September 1989, the Sabina Village Council approved a plat and accepted a dedication of a subdivision consisting of 5.97 acres of real estate owned by defendant-appellee and cross-appellant Jo S. Rolfe. Shortly thereafter, in late April 1990, appellee and her husband, defendant-appellee and cross-appellant Richard Rolfe, began to erect manufactured homes on the property. Because appellees commenced construction without prior approval from or giving notification to plaintiff-appellant and cross-appellee, Clinton County General Health District, appellant ordered that all construction on the site cease and posted "stop work" signs on the property. The construction nevertheless continued.

The village council approved the subdivision of the property (which is now known as "Sooner Subdivision") into twenty-eight lots on September 11, 1990, and accepted the dedications to the village of all necessary utility easements and Sooner Street, a thoroughfare which runs through the subdivision. Documents submitted to this court indicate that lots 1–26 are contiguous and abut Sooner Street to the north, and lots 27 and 28 are contiguous and abut Sooner Street to the south.

Appellees retained ownership of all twenty-eight lots until January 25, 1991, at which time lots 3, 6, 9, 12, 15, 18, 26 and 28 were transferred to third parties by recorded deeds. With the exception of lots 1, 21, 22 and 23, each lot owned by appellees contains a manufactured housing unit erected by appellees. Of the sixteen lots which have such units, thirteen were eventually occupied and appellees received rent on twelve of the homes.

Prior to the conveyances, appellant filed a complaint for injunctive relief on January 17, 1991, wherein it alleged that appellees acted in violation of several Ohio Administrative Code sections when they constructed a mobile home park without appellant's approval and placed mobile homes in an unlicensed mobile home park.[1] As relief, appellant sought to enjoin appellees from operating an

---

1. The complaint also sought to enjoin Dayton Power & Light Company from providing utility service to any new applicants residing in the park until such time as appellees achieved

unlicensed mobile home park and from collecting rent on or selling any homes until such time as the park became licensed.

Appellees' answer denied appellant's allegations. In particular, appellees asserted that the property at issue was not a "manufactured home park" as the term is defined by R.C. 3733.01 since the lots were either sold or for sale and the village council had dedicated Sooner Street.

In a judgment entry dated September 13, 1991, the trial court initially determined that the twenty-eight lots which make up the subdivision constituted a single tract of land. Since the sale of several of the lots to independent third parties altered the contiguous nature of the lots to the point appellees did not own more than two contiguous lots between lots 1 to 18, the court found the land which encompassed lots 1 to 18 did not amount to a manufactured home park. With respect to these lots, appellant's restraining order was denied. As for lots 19 to 25, however, the court determined such property was a manufactured home park since the lots were contiguous to each other, remained under appellees' ownership and contained three manufactured housing units. The court's decision made no mention of lots 26 to 28.

Appellant has perfected an appeal to this court and asserts in a single assignment of error that the court erred in finding that lots 1 to 18 of Sooner Subdivision did not constitute a manufactured home park. In a cross-appeal, appellees contend in two assignments of error that the court erred in finding that Sooner Subdivision was subject to R.C. 3733.01(A) and that lots 19 to 25 constituted a manufactured home park. For purposes of clarity, all three assignments of error will be considered together.

R.C. Chapter 3733 codifies Ohio's attempt to regulate and monitor the operation and construction of manufactured home parks located within the state. The statute which controls the instant matter, R.C. 3733.01(A), defines a "manufactured home park" as follows:

"[A]ny tract of land upon which three or more manufactured homes used for habitation are parked, either free of charge or for revenue purposes, and includes any roadway, building, structure, vehicle, or enclosure used or intended for use as a part of the facilities of such park. A tract of land which is subdivided and the individual lots are not for rent or rented, but are for sale or sold for the purpose of installation of manufactured homes on the lots is not a manufactured home park even though three or more manufactured homes are parked thereon if the roadways are dedicated to the local government authority."

---

compliance with Ohio law. Appellant voluntarily dismissed Dayton Power & Light Company as a party to the complaint shortly before the February 1, 1991 hearing.

The express language of the statute indicates that a manufactured home park exists where there is a single tract of land upon which three or more manufactured homes are parked, whether for revenue purposes or free of charge. In the event the above requirements are satisfied, R.C. 3733.03(A) requires the operator of the manufactured home park to obtain a license in order to operate the park.

Conversely, where (1) a tract of land is subdivided, (2) the resultant individual lots are not rented or for rent but are sold or for sale for the purposes of installation of manufactured homes on the lots, and (3) the roadways are dedicated to the local governmental authority, the statute provides that a manufactured home park has not been established even if three manufactured homes are placed on the property. In such a case, the licensure requirement stated in R.C. 3733.03(A) does not apply.

A review of both R.C. 3733.01(A) and the placement of the manufactured homes on appellees' property clearly evidences an intent on the part of appellees to exclude the park from the reach of the statute. Evidence elicited at the hearing reveals appellees transferred title of nearly every third lot in Sooner Subdivision to third parties with the result that with one exception, lots 19 to 25, they did not retain ownership over any three contiguous lots. They then erected manufactured homes on those lots which they retained, with the exception of lots 21 to 23, in such a way that no more than two homes were situated on any two contiguous lots owned by appellees. Given this result, it is patently obvious appellees devised a scheme that attempted to elude the licensing requirement mandated by R.C. 3733.01(A).

In order for appellees scheme to succeed, it is necessary that each lot within Sooner Subdivision be recognized as an individual "tract of land." If this conclusion is reached, the fact that each individual lot in the subdivision contains less than three manufactured homes makes it unnecessary to obtain a license pursuant to R.C. 3733.01(A). On the other hand, if all twenty-eight lots are found to quantify a "tract of land," appellees would be required to procure a license to operate the park, as it is undisputed that more than three manufactured homes are situated in the subdivision. The threshold question before this court therefore is whether, under the particular facts of the case *sub judice*, the term "tract of land" as used in R.C. 3733.01(A) contemplates each lot in Sooner Subdivision or the subdivision as a whole.

Assistance in answering this question cannot be gleaned from R.C. 3733.01(A), as the term "tract of land" is not defined in the statute. Nor is there any case law on the topic. While the question posed to this court appears to be one of first impression in Ohio, there are two relevant Ohio Attorney General opinions which address the issue. Although we recognize that such opinions are not, as a

general rule, controlling, in light of the paucity of case law on the subject, we find them to be helpful.

In 1977 Ohio Atty.Gen.Ops. No. 77–038, the Attorney General was faced with the question of whether a house trailer park[2] is subject to the provisions of R.C. Chapter 3733 when all utilities, roadways and common areas in a tract of land developed as a house trailer park are owned and controlled by a single entity but some or all of the lots are subsequently sold with restrictions in the deeds that only house trailers are to be placed on the lots. In reaching the conclusion that the whole development, by definition, remains a house trailer park, the Attorney General found that despite the fact the lots were actually sold, there still remained an ongoing relationship between the park and the individual lot owners. "Since all the utilities[,] roadways and common areas are owned and controlled by a single entity, the status of an individual lot is always inextricably related to the total park concept." *Id.* at 2–134. Consequently, the Attorney General wrote, " * * * although the tract has been subdivided for the purposes of transferring ownership, the individually owned lots can still function for many practical purposes only as a total development." *Id.* at 2–134 to 2–135.

Several years later, in 1991 Ohio Atty.Gen.Ops. No. 91–020, the Attorney General considered the similar question of when multiple lots may be considered a "tract" for purposes of R.C. 3733.01(A)'s definition of a "manufactured home park." The analysis of the question commenced with the following remark:

"Inherent in [the] question is recognition of the fact that the local health authority cannot simply group identifiably separate units of land until an area containing three or more manufactured home parks is achieved and arbitrarily designate that area as a 'tract' which is a manufactured home park. There are numerous patterns of conveyances and rental arrangements which can result in individual manufactured home sites springing up next to each other, particularly in areas where no local subdivision or zoning regulations intervene to control the development and use of land. * * * [S]ometimes such development occurs over a period of time, with no apparent pattern or intent, and at other times there appears to have been an effort by a landowner or developer to circumvent the application of R.C. Chapter 3733 by conveying contiguous lots to new owners, who then rent these smaller areas to the occupants of manufactured homes. The result is that if the larger combined area can be considered a 'tract,' it has sufficient manufactured home sites to constitute a manufactured home park, but if the smaller units of land are considered as 'tracts' in their own right, none of the smaller units qualify." *Id.* at 2–104.

---

2. Prior to an amendment to R.C. 3733.01 in 1984, manufactured home parks were referred to as house trailer parks.

Examining the distinction between rental agreements which divide a commonly held area of land and those divisions achieved by an actual conveyance, the Attorney General found that a rental agreement does not change the fact that the lessor is still ultimately responsible for whether three or more manufactured home sites occur within the commonly held area. Accordingly, it was determined that R.C. 3733.01(A) did not provide for any exceptions to the requirement of a license when a "tract" is subdivided by rental agreements.

As for conveyances, it was observed that while such a transfer destroys unity of control of the property in a way not done by a rental agreement, an owner of a "tract" may still effectively control the development of the tract by conveying portions of the land with the provision that the smaller areas be developed as manufactured home sites. For this reason, the Attorney General concluded that the boundaries of a "tract" could not be determined based on the current ownership of the land on which manufactured homes are placed. Instead, the Attorney General promulgated the following test:

"Multiple parcels or lots containing manufactured home sites can be considered together as constituting a tract, for purposes of defining a manufactured home park under R.C. 3733.01(A), when they occur in a contiguous area of land which was under common ownership or control at the time a third manufactured home site was created in that contiguous area, except when such parcels or lots have been separated from the original area under common control by a sale not restricting their use to the placement of manufactured homes, or, if the sale is for the purpose of installing manufactured homes, the parcels or lots for sale or sold are served by roadways dedicated to the local government authority." *Id.* at paragraph two of the syllabus.

Applying the aforementioned to the instant action, we find that the multiple lots located within Sooner Subdivision could not be considered collectively for the purpose of defining a "manufactured home park." The record indicates the eight lots which appellees separated from the subdivision and sold to third parties did not contain restrictions that required the buyers to install manufactured homes on the lots. Additionally, the remaining twenty lots owned by appellees are for sale and, equally important, are served by Sooner Street, a roadway dedicated to the village of Sabina. Given that each individual lot in the subdivision fulfills either one of these two conditions, it necessarily follows that the lots cannot be considered together. In light of the fact that each lot is an individual tract of land that fails to contain three manufactured homes, Sooner Subdivision is not subject to the licensure requirement mandated in R.C. 3733.01(A).

█ Appellant submits, however, that the fact Sooner Street has been dedicated to the local government authority should not exempt the subdivision from regulation where the record unequivocally shows appellees retain ownership of

twenty lots and receive rents from twelve of the thirteen occupied homes placed on the lots. We disagree. In a "traditional" manufactured home park, the operator of the park owns all of the services which are provided to the park's residents, including the roadways. Because manufactured home park residents are necessarily dependent on the park's operator for these services, governmental regulation, such as those rules delineated in R.C. Chapter 3733, is necessary in order to ensure the health, safety and welfare of the residents.

The fact the lots in the manufactured home park at issue are served by a dedicated roadway diminishes the state's justification to monitor the park. A dedicated roadway signifies that the operator of the park is no longer responsible for the maintenance of the road, which burden is now placed on the local municipality. By relieving the operator of the burden, the extent of the dependency that exists between the operator of the manufactured home park and the park's residents is lessened. In the instant action, that each lot also has its own utilities and is connected to the public sanitation system further weakens the level of dependency the residents have on the operator to the point that each lot is capable of functioning separately, independent of the other lots in the park. Under these circumstances, we can think of no interest which the state has in monitoring and regulating Sooner Subdivision.

On the basis of the aforementioned, it is our belief that Sooner Subdivision is not a manufactured home park for purposes of R.C. 3733.01(A). We therefore find that while the court properly found lots 1 to 18 in the subdivision did not constitute a manufactured home park, it erred in concluding that lots 19 to 25 amounted to a manufactured home park.

Appellant's sole assignment of error is thus not well taken and appellees' two assignments on the cross-appeal are sustained. The court's judgment is accordingly affirmed in part and reversed in part.

*Judgment accordingly.*

JONES, P.J., and KOEHLER, J., concur.